# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| AMERICREDIT FINANCIAL SERVICES, INC., d/b/a GM Financial,<br><br>Plaintiff,<br><br>vs.<br><br>ADAMS MOTOR COMPANY, et al.,<br><br>Defendants. | No. C18-4067-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

## I.    INTRODUCTION

Plaintiff Americredit Financial Services, Inc., d/b/a GM Financial (GM Financial), filed its complaint (Doc. No. 1) against defendants Adams Motor Company (AMC) and Robert G. Adams (Adams) on August 2, 2018, based on diversity jurisdiction under 28 U.S.C. § 1332.  Two motions by GM Financial are currently before me: (1) a motion (Doc. No. 14) to dismiss defendants' counterclaims and strike an affirmative defense and (2) a motion (Doc. No. 27) for summary judgment.

Defendants did not file a resistance to the motion to dismiss counterclaims and strike an affirmative defense.  They did file a resistance (Doc. No. 34) to the motion for summary judgment and GM Financial filed a reply (Doc. No. 35).  I find that oral argument is unnecessary.  *See* Local Rule 7(c).

## II.    RELEVANT FACTS

The only fact in dispute is the amount of the judgment to which GM Financial is entitled.  *See* Doc. No. 34.  All other facts discussed below are undisputed:

GM Financial is a Delaware corporation with its principal place of business in Fort Worth Texas. AMC is an Iowa company operating an automobile dealership in Denison, Iowa. Adams is a resident of Iowa.

GM Financial acted as AMC's floorplan lender[1] and entered into a term loan and revolving line of credit with AMC on June 15, 2015. Doc. No. 27-2 at 2. The terms of the parties' agreements were governed by a Master Loan Agreement (Loan Agreement) and a Revolving Line of Credit Promissory Note (RLOC), both of which are in the record. *Id*. at 2-3. The balance of the RLOC (approximately $280,972.22) was converted into a term loan on May 5, 2017 (the First Term Loan). The First Term Loan provides that AMC will repay GM Financial $280,972.22, plus interest at the rate of 6.25 percent. *Id*. at 3. AMC agreed that its payments under the First Term Loan would comply with the payment provisions set forth in Section 5 of the First Term Loan. *Id*. AMC also agreed that it would be in default under the First Term Loan if it failed to make payment when due or if it otherwise committed an "Event of Default" under the Loan Agreement. *Id*. An "Event of Default" under the Loan Agreement is defined as "fail[ure] to comply with or perform under any term, condition or covenant of this Agreement" including the failure to pay any sums as required. *Id*. at 2-3. It is also an "Event of Default" if any Borrower, entity Borrower, or Guarantor is indicted or convicted of either a felony or misdemeanor involving fraud. *Id*.

On July 1, 2015, GM Financial and AMC entered into a Term Loan Promissory Note for the sum of $800,000 (the Second Term Loan). *Id*. at 3. The Second Term Loan provides that AMC will repay GM Financial $800,000.00 plus interest at the rate of 4.25 percent. *Id*. at 4. AMC agreed that its payments would comply with the payment

---

[1] A floorplan lender lends money to automobile dealerships for the purchase of new and used automobiles. The dealership purchases vehicles from various sources and the lender finances those purchases. The dealership holds the vehicle on its lot and pays interest for the vehicle until it sells. Within a certain number of days after receiving sales proceeds, the dealership is required to pay off the loan for that vehicle. Doc. No. 27-2 at 2.

provisions set forth in Section 5 of the Second Term Loan. *Id.* It further agreed that it would be in default if it failed to make any payment under the Second Term Loan when due or if it committed an "Event of Default" under the Loan Agreement. *Id.*

Adams guaranteed all of AMC's obligations to GM Financial. *Id.* The Continuing Guaranty provides that Adams "unconditionally and absolutely guarantees the prompt and punctual payment, when due, upon maturity, by acceleration, or otherwise, of all of the Obligations that [GM Financial] may now and in the future extend to [AMC]." *Id.*

GM Financial performed all of the terms and conditions of the Loan Agreement, term loan promissory notes and Continuing Guaranty. *Id.* AMC failed to pay as required by the Loan Agreement, First Term Loan and Second Term Loan. *Id.* at 5. GM Financial sent defendants Notices of Default on December 13, 2017; January 3, 2018; January 10, 2018; January 30, 2018; February 13, 2018; February 22, 2018; March 7, 2018; March 13, 2018; March 21, 2018 and April 3, 2018. *Id.* On April 23, 2018, GM Financial terminated AMC's credit lines and demanded immediate payment of the outstanding balances of the Loan Agreement, First Term Loan and Second Term Loan in the amount of $2,377,608.35. As of January 31, 2019, GM Financial asserts that defendants are indebted in the amount of $1,103,107.37, plus interest and legal fees. *Id.*

On January 17, 2018, GM Financial filed a Petition for Replevin with the District Court of Crawford County, Iowa, which sought possession of vehicles financed by GM Financial. *Id.* at 6. GM Financial filed a motion for summary judgment in that action, which was granted on August 14, 2018.[2] *Id.* The court found that GM Financial was entitled to permanent possession of certain vehicle collateral due to AMC's breach of the Loan Agreement. It also found that GM Financial did not waive its right to enforce the terms of the Loan Agreement. *Id.*

GM Financial filed the instant action on August 2, 2018, alleging breach of contract (Count I), breach of contract of the continuing guaranty (Count II) and unjust

---

[2] GM Financial has submitted only part of that order. *See* Doc. No. 27-3 at 79-84.

enrichment (Count III). *See* Doc. No. 2. Defendants asserted three affirmative defenses in their Answer: failure to state a claim, unclean hands and waiver. Doc. No. 27-2 at 7; Doc. No. 9. They also filed counterclaims based on promissory estoppel and breach of the implied covenant of good faith and fair dealing. *Id.* GM Financial argues in its motion to dismiss counterclaims and strike an affirmative that defendants have released all claims, including claims for waiver against GM Financial. Defendants did not file a response to that motion and the time for doing so has passed.

## III.   ANALYSIS

### A.   *Motion to Dismiss Counterclaims*

GM Financial seeks to dismiss the counterclaims of promissory estoppel and breach of implied covenant of good faith and fair dealing identified in defendants' Answer (Doc. No. 9). Under Rule 12(b)(6), "to survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 910 (8th Cir. 2016). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces but does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when

4

> the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

GM Financial argues that defendants' counterclaims fail because defendants signed a Forbearance Agreement[3] under which they explicitly waived and released any and all claims against GM Financial. GM Financial also argues that defendants fail to allege sufficient facts to state its counterclaims of promissory estoppel and breach of implied covenant of good faith and fair dealing. As mentioned above, defendants have not resisted GM Financial's motion to dismiss. I will consider whether defendants have sufficiently stated their counterclaims before considering GM Financial's affirmative

---

[3] The Forbearance Agreement was attached to the complaint. *See* Doc. No. 1-5.

5

defense of waiver based on the Forbearance Agreement. In reviewing the counterclaims, I may consider the terms of the written contracts as they are embraced by the pleadings and attached to the complaint. *See M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010) ("Where, as here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint."); *Stahl v. U.S. Dept. of Ag.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").

### 1. *Promissory Estoppel*

In support of their counterclaim of promissory estoppel, defendants[4] allege that GM Financial and defendants had a clear and definite agreement that GM Financial would provide defendants with credit for new and used vehicles. Doc. No. 9 at 12. They allege that GM Financial made a clear promise that it would continue lending to defendants through February 16, 2018.[5] *Id.* They allege they acted to their substantial detriment in reasonable reliance on the lending agreement and subsequent promise to continue lending to defendants through February 16, 2018. *Id.* Defendants allege that GM Financial refused to follow through on its promises outlined in the agreement and its promise to continue lending to defendants through February 16, 2018, despite defendants' efforts to reduce indebtedness and follow the loan modification requests. *Id.* Defendants allege they were placed in an extremely difficult financial position without the necessary

---

[4] While defendants are technically "counterclaim plaintiffs" for purposes of their counterclaims, I will continue to refer to them as defendants for consistency throughout this order.

[5] In defendants' general allegations in support of their counterclaims they allege that on October 6, 2017, GM Financial "noticed [defendants] of its intent to cease lending to [defendants] effective February 16, 2018." Doc. No. 9 at 11. They state that GM Financial prematurely terminated its lending relationship with defendants on January 10, 2018, and shortly thereafter filed its replevin petition. *Id.*

operating cash by GM Financial's abrupt and unwarranted refusal to continue the lending timeline as agreed upon by the parties. *Id*. Due to GM Financial's refusal to continue lending through February 16, 2018, defendants allege they were forced to seek financing from other institutions offering less-favorable terms, suffered cash flow problems that prevented them from timely repaying GM Financial and ultimately had to cease operating. *Id*. at 13.

GM Financial argues defendants have not alleged sufficient facts to state a claim of promissory estoppel because the parties' relationship is governed by written agreements. Under Iowa law,[6] the elements of a claim for promissory estoppel are:

> (1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Newkirk v. GKN Armstrong Wheels, Inc.*, 168 F. Supp. 3d 1174, 1189 (N.D. Iowa 2016) (quoting *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 49 (Iowa 1999)).

Because the parties already have a written contract, the issue is whether the alleged promise in this case (to continue providing financing through February 16, 2018) added to or altered the terms of the contract by means of promissory estoppel. The Master Loan Agreement provides in section 21.5:

> Except are provided herein through the use of a Change Notice by Lender, no term or provision of this Agreement will be deemed to be altered or amended in any way unless such an amendment or alteration is contained in a separate written instrument signed by Borrower and Lender. No conduct or course of dealing on the part of the Lender, or any oral statement on the part of the Lender's officers, employees, agents, or attorneys, may

---

[6] Neither party explicitly states that Iowa law applies to this dispute, however the Master Loan Agreement states: "This Agreement, each Related Document and the relationships of the parties are subject to, and are to be construed in accordance with, the laws of the state in which each particular Borrower has its principal place of business, regardless of the conflict of law rules of that state." Doc. No. 27-3 at 26. Therefore, I will apply Iowa law.

7

> be construed by Borrower, or by Borrower's owners, principals or management officials, or by any Guarantor, or by any court of law or in arbitration, to amend, alter or in any way modify the provisions of this Agreement, or the relationship of the parties, or the obligation of any party to any other person or entity.

Doc. No. 1-1 at 17. "Change Notice" under the Master Loan Agreement means "any written notice sent or provided to Borrower by Lender, advising Borrower of a change in, or establishment of, one or more of the terms and conditions of this Agreement and/or any Related Document." *Id.* at 1.

Defendants do not indicate whether GM Financial's notice of its intent to cease lending effective February 16, 2018, was written or oral. *See* Doc. No. 9 at 11-12. They did not attach any documents to their Answer. Regardless of the type of notice, neither would be sufficient to establish a claim of promissory estoppel. If the notice was written, defendants would have a claim of breach of contract, not promissory estoppel. *See Scott v. Grinnell Mut. Reins. Co.*, 653 N.W.2d 556, 562 (Iowa 2002) ("[T]he law will not imply a contract where there is an express contract."); *John T. Jones Const. Co. v. Hoot Gen. Constr.*, 543 F. Supp. 2d 982, 1021 (S.D. Iowa 2008) ("Because [the plaintiff] has a complete remedy at law for breach of contract there is no reason to resort to equity."). If the notice was oral, it would be ineffective under section 21.5 of the Master Loan Agreement providing that all amendments to the Agreement (aside from a Change Notice) must be in writing and signed by the Borrower and Lender and no oral statement by GM Financial or its agents may be construed as modifying the provisions of the Agreement. *See* Doc. No. 1-1 at 17. A Change Notice must also be a "written notice," but does not require both parties' signatures. As such, defendants' counterclaim fails based on the parties' written agreement.

Additionally, defendants' promissory estoppel claim fails because it does not allege facts constituting detrimental reliance. Defendants have not stated any facts to suggest they changed their position in reliance on the alleged promise that lending would continue through February 16, 2018. They have not alleged any action or inaction they took in

reliance on the alleged promise that was to their detriment. While they allege they had to seek financing from other institutions with less favorable terms, the alleged facts do not support a finding that this was due to GM Financial's broken promise rather than defendants' defaults. In other words, they have not alleged they were worse off as a result of relying on the promise as opposed to the position they would have been in otherwise.

For these reasons, I find that defendants' counterclaim of promissory estoppel fails to state a claim upon which relief may be granted. GM Financial's motion to dismiss will be granted as to that counterclaim.

### 2. *Breach of Implied Covenant of Good Faith and Fair Dealing*

With regard to their second counterclaim, defendants allege that the contracts between the parties are commercial contracts containing an implied covenant of good faith and fair dealing. Doc. No. 9 at 13. They allege that the purpose of the parties' agreement was to provide defendants with the necessary cash-flow financing to operate their car dealership. In exchange, defendants paid interest on that financing and sold GM branded vehicles. *Id*. at 13-14. Defendants allege the implied covenant was breached by GM Financial when it abruptly reduced defendants' used-vehicle floor plan and refused to make loans for used vehicles. *Id*. They allege this caused damage as they were forced to seek financing from other institutions with less-favorable terms, suffered cash flow problems that prevented defendants from timely repaying GM Financial and ultimately had to cease operating due to its financial position. *Id*. at 14.

The implied covenant of good faith and fair dealing is inherent in all contracts. *Alta Vista Properties, LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 730 (Iowa 2014). "The underlying principle is that there is an implied covenant that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id*. (quoting *Am. Tower, L.P. v. Local TV Iowa, L.L.C.*, 809 N.W.2d 546, 550 (Iowa Ct. App. 2011)) (internal quotations omitted). The

implied covenant of good faith and fair dealing "does not give rise to new substantive terms that do not otherwise exist in the contract." *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 34 (Iowa 2012). It "prevents one party from using technical compliance with a contract as a shield from liability when that party is acting for a purpose contrary to that for which the contract was made." *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 974 (8th Cir. 2005).

GM Financial argues that this counterclaim fails because defendants have not sufficiently alleged what the "covenant" was that was breached. They point out that defendants have admitted that the purpose of the agreement was to "create a discretionary credit facility under which [AMC] may request loans from [GM Financial] and [GM Financial] may, in its discretion, make loans to [AMC]." Doc. No. 1-1 at 1. The Master Loan Agreement provided that GM Financial could reduce financing "at any time." *Id.* at 16. GM Financial argues defendants may not rely on actions expressly permitted by the contract to support their claim. GM Financial further argues that defendants may not avail themselves of rights under the contract when they have admitted many acts of default including selling vehicles out of trust and failing to make loan payments. Finally, it argues that defendants have not alleged facts regarding any damages defendants suffered as a result of any alleged breach.

The implied covenant of good faith and fair dealing generally operates upon a condition or term of a contract that is subject to the control of one of the parties. *See, e.g. Midwest Mgmt. Corp. v. Stephens*, 291 N.W.2d 896, 913 (Iowa 1980) (stating that a contract affording one party's "sole discretion" to terminate the contract required party "to exercise that discretion in a reasonable manner on the basis of fair dealing and good faith."). Here, both parties were permitted to terminate the agreement "at any time and for any or no reason." Doc. No. 1-1 at 16. While the agreement contained an implied covenant of good faith and fair dealing, defendants have failed to allege sufficient facts to suggest a breach of that implied covenant that is attached to a contract term. *See Bagelmann*, 823 N.W.2d at 34 (concluding there was no breach of implied covenant of

good faith and fair dealing by mortgagee's failure to notify or update mortgagors concerning flood zone status because any allegation of bad faith lacked a contract term to which it could be attached). They have not alleged that GM Financial's early termination unfairly prevented defendants from receiving the benefits of the contract. As noted above, the implied covenant of good faith and fair dealing cannot create new substantive terms. Moreover, any "benefit" of the contract that defendants were deprived of was the result of defendants' own defaults, not GM Financial's actions.

For these reasons, I find that defendants' counterclaim of breach of the implied covenant of good faith and fair dealing fails to state a claim upon which relief may be granted. GM Financial's motion to dismiss will be granted as to that counterclaim.

### 3. *Waiver*

With regard to GM Financial's waiver argument, I note that this is essentially an affirmative defense to defendants' counterclaims raised in GM Financial's motion to dismiss. *See First Union Nat. Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 622 n.5 (8th Cir. 2007) (citing, with approval, cases in which the court has accepted and favorably cited affirmative defenses raised for the first time on a motion to dismiss or motion for summary judgment). The Forbearance Agreement was attached to the complaint as Exhibit 5. *See* Doc. No. 1-5. It was signed on April 6, 2017, and provides in relevant part:

> As additional consideration for GM Financial's forbearance, Borrower and each Guarantor, individually and respectively, hereby forever and unconditionally waives, releases, acquits and discharges any and all claims, demands, claims or relief or causes of action of whatever kind or character, whether accrued or unaccrued, known or unknown, now existing or arising hereafter, which Borrower and/or Guarantor may hold or own, or claim to hold or own, or at any time heretofore may have owned or held or claimed to own or hold, or at any time hereafter may own or hold, or claim to own or hold, against GM Financial, its officers, employees, directors, agents, attorneys, predecessors, parent, subsidiaries and affiliates (and all officers, employees, directors, agents and attorneys

of such predecessors, parent, subsidiaries and affiliates). Borrower and Guarantor expressly acknowledge that this Agreement is to include in its effect, without limitation, claims of which they are unaware or do not expect to exist in their favor, arising out of or on account of, any transaction, happening or occurrence whatever, and that this Agreement contemplates the release and discharge of any and all such claims by Borrower and Guarantor. Further, it is expressly agreed between Borrower, Guarantor, and GM Financial that the possibility that such claims exist, being known and understood by all parties, has been explicitly considered and taken into account in the execution hereof, for the purpose of implementing a full and complete release and discharge of the entities set forth above. Borrower and each Guarantor further waive any rights they have or may have to claim waiver, estoppel, laches or bad faith against GM Financial in connection with any act of GM Financial related to the Loan Agreement or otherwise.

Doc. No. 1-5 at 5-6. Defendants offer no resistance to GM Financial's argument with regard to the above provision of the Forbearance Agreement.

A waiver is a contract governed by principles of contract law. *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993). "The cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008). *See also Berryhill v. Hatt*, 428 N.W.2d 647, 654 (Iowa 1988) ("It is the cardinal principle of contract construction that the parties' intent controls; and except in cases of ambiguity, this is determined by what the contract itself says."). "Interpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect." *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978). "Interpretation is reviewed as a legal issue unless it depend[s] at the trial level on extrinsic evidence. Construction is always reviewed as a law issue." *Id.* "When a contract is not ambiguous, it will be enforced as written, but when there are ambiguities in a contract, they are strictly construed against the drafter." *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 862-63 (Iowa 1991) (internal citation omitted).

I find the waiver provision in the Forbearance Agreement cited above is clear and unambiguous. As such, I find that it should be enforced as written. *See Iowa Fuel & Minerals, Inc.*, 471 N.W.2d at 862-63 ("When a contract is not ambiguous, it will be enforced as written."). Defendants have waived any and all claims against GM Financial, including the counterclaims. GM Financial is entitled to dismissal of the counterclaims on this additional, alternative basis.

### B.     *Motion to Strike Affirmative Defense*

GM Financial seeks to strike defendants' affirmative defense at paragraph 113, which states that "Plaintiff has waived its right to recovery by its course of dealing with Defendants." Doc. No. 9 at 8. Under Federal Rule of Civil Procedure 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 8(c) provides that "a party must affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8(c). This rule is "intended to give the opposing party both notice of the affirmative defense and an opportunity to rebut it." *First Union Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 622 (8th Cir. 2007).

GM Financial argues that the waiver provision in the Forbearance Agreement applies equally to the affirmative defense in paragraph 113. That provision explicitly states that "Borrower and each Guarantor further waive any rights they have or may have to claim waiver, estoppel, laches or bad faith against GM Financial in connection with any act of GM Financial related to the Loan Agreement or otherwise." Doc. No. 1-5 at 5-6. As stated above, I find the waiver provision to be clear and unambiguous meaning it should be enforced as written. Because defendants' affirmative defense in paragraph 113 is a claim of waiver and defendants specifically agreed to waive any such claim, I find that the affirmative defense in paragraph 113 should be stricken.

## C. Motion for Summary Judgment

As noted above, the only factual dispute between the parties concerns the amount of the judgment to which GM Financial is entitled. Defendants challenge the amount requested by GM Financial, arguing that GM Financial is partially responsible for some of the financial losses. In support, they offer an affidavit by Adams (Doc. No. 34-1) in which he states that GM Financial did not sell the vehicles in a reasonable commercial manner to maximize the return once it repossessed them. Doc. No. 34-1 at 4. Defendants request an evidentiary hearing on the issue of the amount of the judgment.

GM Financial argues that defendants have essentially raised an untimely affirmative defense – that the repossessed collateral could have been sold for more money. Doc. No. 35 at 1. It contends that because defendants never pled failure to mitigate damages, or any related affirmative defense, they have waived the opportunity to assert it now. GM Financial adds that Adams' affidavit is unsupported by independent evidence and does not generate a genuine issue for trial. *Id.* at 2-3. Finally, it argues that under the Iowa Uniform Commercial Code, GM Financial (as a secured party) is not required to prove that it sold repossessed collateral in a commercially reasonable manner, "unless the debtor or a secondary obligor places the secured party's compliance in issue." Iowa Code § 554.9626(1)(a).

Defendants raised the following affirmative defenses in their answer:

111. The Plaintiff fails to state a claim upon which relief can be granted.

112. Plaintiff's claims are barred by the doctrine of unclean hands.

113. Plaintiff has waived its right to recovery by its course of dealing with Defendants.[7]

---

[7] As noted *supra* page 13, the affirmative defense at paragraph 113 is stricken based on the Forbearance Agreement. GM Financial did not move to strike the other two affirmative defenses. I note that the affirmative defense at paragraph 111 has essentially been waived by defendants' representation that they are not contesting that there was a breach of contract. With regard to the "unclean hands" defense in paragraph 112, this defense "considers whether the

Doc. No. 9 at 7-8. Failure to mitigate damages is an affirmative defense. *See Sayre v. Musicland Group, Inc.*, 850 F.2d 350, 354 (8th Cir. 1988) ("Since the overwhelming majority of federal courts have decided, for whatever reasons, that failure to mitigate damages is an affirmative defense under the catchall clause of Rule 8(c), we would thwart the purpose of the federal rules if we were to hold otherwise."). Rule 8(c) requires that a party "must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c)(1). "As with other affirmative defenses, failure to plead mitigation of damages as an affirmative defense results in a waiver of that defense and its exclusion from the case." *Sayre*, 850 F.2d at 354.

Defendants did not plead failure to mitigate damages as an affirmative defense. They also did not allege in their Answer (as Adams did in his affidavit) that GM Financial failed to sell the vehicles in a reasonable commercial manner to maximize return upon repossession. Therefore, this defense has been waived. Defendants make no other argument in resistance to GM Financial's motion for summary judgment. Nonetheless, I must determine whether GM Financial is entitled to judgment as a matter of law on its breach of contract claim.[8] *See* Fed. R. Civ. P. 56(a) (stating a movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law") (emphasis added).

To prevail on a breach of contract claim, a plaintiff must prove:

---

party seeking relief has engaged in inequitable conduct that has harmed the party against whom he seeks relief." *General Car & Truck Leasing System, Inc. v. Lane & Waterman*, 557 N.W.2d 274, 279 (Iowa 1996). It is available only in actions seeking equitable relief. *Id. See also Myers v. Smith*, 208 N.W.2d 919, 921 (Iowa 1973) (noting the maxim "is ordinarily invoked to protect the integrity of the court where granting affirmative relief would run contrary to public policy or lend the court's aid to fraudulent, illegal or unconscionable conduct."). Because GM Financial is seeking monetary relief, this defense does not bar GM Financial's recovery on its breach of contract claims. *See Ellwood v. Mid States Commodities, Inc.*, 404 N.W.2d 174, 184 (Iowa 1987) ("[A] plaintiff who is denied an equitable remedy because he has unclean hands, still has his legal remedy, whatever that is.").

[8] GM Financial seeks summary judgment on its breach of contract claim and alternatively seeks summary judgment on its unjust enrichment claim. *See* Doc. No. 27-1 at 5.

(1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [the claimant] has performed all the terms and conditions required under the contract, (4) the [opposing party's] breach of the contract in some particular way, and (5) that [the claimant] has suffered damages as a result of [the opposing party's] breach.

*Royal Indem. Co. v. Factor Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)). As noted above, there is no dispute as to these elements and GM Financial has offered sufficient evidence in support of them.

With regard to the amount of damages, "when a contract has been breached the nonbreaching party is generally entitled to be placed in as good a position as he or she would have occupied had the contract been performed." *Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 831 (Iowa 1998). Damages for breach of contract are limited to "those injuries which may reasonably be considered as arising naturally from the breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of the parties, at the time of contracting, as a probable result of the breach." *R.E.T. Corp. v. Frank Paxton Co., Inc.*, 329 N.W.2d 416, 420 (Iowa 1983) (citing *Meyer v. Nottger*, 241 N.W.2d 911, 920 (Iowa 1976)). The plaintiff "must prove that the damages resulted from [the defendant's] breach and were in the contemplation of the parties. *Royal Indem. Co.*, 786 N.W.2d at 846. Damages "must be ascertainable with reasonable certainty without resort to speculation and conjecture." *Palmer v. Albert*, 310 N.W.2d 169, 174 (Iowa 1981).

GM Financial argues it is entitled to damages in the amount of $1,103,107.37 consisting of the following:

- $893,812.48 – Principal Balance
- $110,937.22 – Floorplan interest through January 31, 2019
- $7,945.90 – Floorplan insurance through January 31, 2019
- $13,485.67 – Loan fees

- $76,926.10 – Customer fees including lender representative and additional audit expenses plus legal fees

Doc. No. 27-1 at 6. GM Financial does not cite any documents in support of these amounts. While GM Financial has submitted a spreadsheet showing defendants' loan history through February 11, 2019, it does not account for all of the amounts identified above. *See* Doc. No. 27-3 at 68-78. The only document GM Financial has submitted in support of the amount of judgment is an affidavit from Howard Revitz, Assistant Vice President of Commercial Lending Services of GM Financial, stating that "[a]s of January 31, 2019, Defendants are indebted to GM Financial in the amount of $1,103,107.37, plus interest and legal fees." Doc. No. 27-3 at 7.

While GM Financial may be able to support the breakdown of its requested damages as indicated above, that support is not in the record. I decline to award GM Financial's requested amount of damages based solely on a representation in an affidavit. *See Farmers Coop. Society, Sioux Center, Iowa v. Leading Edge Pork LLC*, No. 16-CV-4034-LRR, 2017 WL 3097163, at *11, n.3 (N.D. Iowa July 20, 2017) (concluding plaintiff had not proven it was entitled to full damages sought because there was no "particularized accounting or documentation detailing the amount of other damages" and that "[a]bsent a detailed accounting of the activity in [defendant's] feed account, the court cannot accurately determine at this stage the amount of finance charges to which [plaintiff] is entitled."). Instead, I will direct GM Financial to provide additional supporting documentation concerning its claimed damages and will give defendants the opportunity to respond.

### IV. CONCLUSION

For the reasons stated herein:

1. GM Financial's motion (Doc. No. 14) to dismiss defendants' counterclaims and strike an affirmative defense is **granted**.

2.	GM Financial's motion (Doc. No. 27) for summary judgment is **granted**. GM Financial is entitled to the entry of judgment in its favor, in an amount to be determined, on its claim for breach of contract.

3.	Within twenty-one (21) days of the date of this order, GM Financial must file either (a) a joint stipulation of the parties concerning the amount of GM Financial's damages or (b) supplemental supporting documentation to establish the amount of its requested judgment, including interest and attorney fees.

4.	If GM Financial files supplemental supporting documentation, rather than a joint stipulation of the parties, then defendants may file a response to the documentation within fourteen (14) days after the documentation is filed. In their response, defendant may not raise any already-rejected defenses (such as failure to mitigate damages). However, they may point out any alleged discrepancies in the amount sought or the supporting documentation and challenge the reasonableness of GM Financial's requested attorney fees.

5.	Upon reviewing the parties' submissions, I will determine whether further proceedings are necessary concerning the amount of the judgment.

**IT IS SO ORDERED.**

**DATED** this 20th day of August, 2019.

_____
Leonard T. Strand, Chief Judge